STATE EX REL. RINGE, ET AL., Appellants v. MADISON LUMBER CO.

———

(May 9, 1927. Opinion and Decree.)

———

(*Syllabus by the Court*)

1. Louisiana Digest—Sales—Par. 18.

When a contractor submits to lumber dealers a list of lumber wanted, specifying quality and grades, and a lumber dealer makes a bid differing in some respect from the contractor's list,

and his bid is accepted, the rights of the parties are governed by the bid.

Appeal from Twenty-fourth Judicial District Court, Parish of Jefferson. Hon. L. Robert Rivarde, Judge.

Action by State ex rel Alfred E. Ringe, et al., against Madison Lumber Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

H. L. Hammett, of New Orleans, attorney for plaintiff, appellant.

J. D. Dressner, of New Orleans, attorney for defendant. appellee.

CLAIBORNE, J. This is a mandamus to order the erasure of an inscription of a pretended privilege in favor of a furnisher of materials.

The relator alleged that he was a building contractor; that he contracted to erect a dwelling for the Phoenix Building Association for account of Widow Arthur J. Benedic; that in order to execute the contract he contracted with the defendant for the purchase of the lumber necessary for the construction of the building; that he paid for all the lumber contracted for and furnished; but nevertheless the defendant has recorded in the mortgage office a privilege against said building for the sum of $322.40. Relator prayed for erasure of said inscription.

The defendant admitted the building contract, admitted the recording of the privilege, and its refusal to cancel it; and alleged a written contract for the furnishing of the lumber and claimed in reconvention a balance due of $322.40 in accordance with the inscription of the privilege.

There was judgment rejecting relator's demand and in favor of the defendant on its reconventional demand.

Relators have appealed.

Neither the petition nor the answer disclose the differences between the parties. But the testimony seems to indicate that the relator complained that the defendant had furnished lumber inferior in quality to the grade contracted for.

The relator submitted to the defendant a lumber list for the necessary material to erect the building. At the top of the list are the words in raised letters: "All long leaf yellow pine Grade 'C'."

The defendant replied in writing on January 24, 1924:

"Mr. A. W. Ringe:

"For the sum of $986.00 we agree to furnish the articles named and described below:"

Then follows a long list of the lumber to be furnished in pieces, size, length, grade, number of feet, price and amount, making a total of $986.00. With regard to the "grade", the list specifies sometimes No. 1 common, other times No. 2 common. Nowhere is there a mention of "all long leaf yellow pine of Grade 'C'."

It seems that Grade "C" is an absolute classification of lumber; the grades are now designated by numbers.

The bid of the defendant was accepted and it furnished the lumber.

On May 3, 1924, the relator, through his attorney, wrote to the defendant in part:

"Mr. Ringe objects to the grade of lumber furnished, as does Mr. Edward Sporl, the architect representing the Phoenix Homestead Assn. The grade of ceiling is not up to the specification; that it is not "C" grade lumber and it cannot be used in the building; and he further states that it is not long leaf pine. He has used 2000 feet of the 9000 feet of this lumber at a loss. The balance, 7000 feet, cannot be used, and there is 700 of the 7000 feet that my client requests you to exchange, in order to live up to your agreement with him in sending the proper grade of lumber, same being contrary to your agreement and specifications."

To which the defendant answered:

"We wish to say that if Mr. Ringe will refer to our estimate, which shows the sizes and grades of lumber we agreed to furnish, he will see that we did not sell him any "C" grade lumber nor is any mention made as to long leaf. We are quite sure that the lumber we delivered is strictly up to grade, and we would be glad to have any competent lumber inspector pass on it."

It will thus be seen that the issue between the relator and the defendant is whether the latter should have furnished lumber of Grade "C" or of No. 2 common and of long leaf pine.

We are of the opinion that the defendant fulfilled his contract by furnishing No. 2 common lumber; and that if the No. 2 was not of long leaf pine it was immaterial, because that was the bid made by the defendant and accepted by the relator and constituted their contract.

John A. Rohr testified that the ceiling furnished was No. 2 common, not long leaf pine, loblolly.

F. A. Pezold said the same.

Charles Noel, manager for defendant, says that "C" grade is no longer in existence; that they did not agree to sell "C" grade but No. 2 common, which they furnished; that there was no dispute except upon that item; that the grade which the relator had in mind would have cost $135 or $180 more.

James Dubos, credit man for defendant, testified that on August 15 he called for payment on the plaintiff, who answered that he owed only $214; he would not say how he figured that amount.

Joseph Owens corroborates the above testimony.

The evidence is that although the defendant had offered to have any competent lumber man pass upon the material furnished by him under his bid that the relator did not accept the offer. That the relator used up all the lumber furnished by defendant except some ceiling.

That the relator wanted to use the ceiling for flooring and did use some of it by cutting the best pieces. There are in the transcript 13 dray receipts for the lumber signed by the relator. These receipts represent all the lumber defendant offered to furnish on his bid. The relator cut up all the lumber except seven or eight hundred feet of ceiling. At $35 a thousand that quantity would be worth about $28. He has it still on hand.

While the testimony establishes that much of the lumber furnished was of an inferior quality, it satisfies us that it was according to the bid made by the defendant, and therefore the plaintiff cannot refuse to pay for it.